AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court
### for the
### Western District of New York

| | |
|---|---|
| United States of America<br>v.<br>ANATOLIY KIRIK<br><br>*Defendant* | Case No. 20-MJ-4218 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

In or about April 2016, in the Western District of New York (County of Monroe), the defendant violated 18 U.S.C. §§ 1001 & 371, offenses described as follows:

the defendant did make false statements to the FMCSA in violation of Title 18, United States Code, Section 1001, and did conspire with others to do the same, in violation of Title 18, United States Code, Section 371.

This criminal complaint is based on these facts:

X   Continued on the attached sheet.

Please see attached affidavit

_____
Complainant's Signature

Jason J. Fernandes, S/A DOT
*Printed name and title*

Affidavit submitted by email/pdf and attested to me as true and accurate by telephone consistent with Fed.R.Crim. P. 4.1 and 4(d) before me this __16__ day of November, 2020.

Date: __November 16, 2020__

_____
Judge's signature

City and State: __Rochester, New York__     Hon. Marian W. Payson, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

STATE OF NEW YORK    )
COUNTY OF MONROE  )  ss:
CITY OF ROCHESTER   )

I, Jason J. Fernandes, being duly sworn, depose and say as follows:

1. I am a Special Agent with the United States Department of Transportation ("USDOT") - Office of Inspector General, and have been so employed for 4 years. I have been trained to investigate, and have participated in investigations of, a range of federal criminal violations impacting the USDOT, including fraud. I am empowered by law to conduct investigations of, and make arrests for, offenses against the United States.

2. This affidavit is made in support of a criminal complaint charging ANATOLIY KIRIK with violations of Title 18, United States Code, Sections 1001 (false statements) and 371 (conspiracy).

3. The information supplied in this affidavit is based on my own investigation of this case, including witness interviews and review of records, information supplied by other law enforcement agents and USDOT personnel, and my experience, training and background as a Special Agent. Because I am submitting this affidavit for the limited purpose of securing an arrest warrant, I have not set forth each known fact known to me about this matter. Rather, I have set forth only those facts that I consider necessary to establish that there is probable cause to believe that ANATOLIY KIRIK violated Title 18, United States Code, Sections 1001 and 371.

## BACKGROUND INFORMATION

4. The Federal Motor Carrier Safety Administration ("FMCSA") is an agency of USDOT. Its primary mission is to reduce crashes, injuries, and fatalities involving large trucks and buses. FMCSA has adopted regulations governing commercial motor carriers ("motor carriers"), including regulations requiring motor carriers to be properly licensed, insured, maintained, and operated.

5. Motor carriers operating in interstate commerce must obtain a USDOT number. The USDOT number is a unique identifier that aids FMCSA in collecting and monitoring a motor carrier's safety record and other information, including but not limited to audits, compliance reviews, crash investigations and inspections. To obtain a USDOT number, motor carriers complete and submit to USDOT, under penalties of perjury, a Form MCS-150, Motor Carrier Identification Report.

6. Many motor carriers operating in interstate commerce are also required to complete and submit to USDOT, under penalties for perjury, an additional form known as a Form OP-1, Application For Motor Property Carrier and Broker Authority. This form is used to obtain interstate operating authority from USDOT based on business of the individual motor carrier (for example, Motor Carrier of Property (except Household Goods), Motor Carrier of Household Goods (Moving Company)). The specific operating authority granted is reflected in a unique identifier known as an MC Number that is assigned by USDOT. Among other things, the MC Number determines what types and levels of insurance the motor carrier must obtain prior to receiving operating authority from USDOT.

7.  Form OP-1 requires an applicant seeking operating authority to provide the following information, among other things: the motor carrier's business address; the motor carrier's insurance information; information regarding the motor carrier's compliance with USDOT safety regulations; and the motor carrier's relationship and affiliation with any other motor carrier within the past 3 years.

8.  To prevent motor carriers from concealing poor safety or compliance records, federal regulations require motor carriers to identify affiliated and reincarnated motor carriers that share common ownership, common management, common control or common familial relationship. Title 49, Code of Federal Regulations, Section 385.1003, prohibits two or more motor carriers from using common ownership, common management, common control, or common familial relationship to avoid compliance with legal requirements or otherwise mask or conceal non-compliance or a history of non-compliance with USDOT safety standards.

9.  FMCSA routinely performs compliance reviews on motor carriers. A compliance review consists of an on-site examination of the motor carrier's operations, such as drivers' hours of service, maintenance and inspection of vehicles, driver qualifications, commercial driver's license requirements, financial responsibility, accidents, hazardous materials, and other safety and transportation records to determine whether a motor carrier meets the safety fitness standard. A compliance review may also be conducted in response to a request to change a safety rating, to investigate potential violations of safety regulations by motor carriers, or to investigate complaints or other evidence of safety violations. The compliance review may result in the initiation of an enforcement action by FMCSA.

10. A motor carrier is issued a safety rating after a compliance review is completed. There are four types of safety ratings: Satisfactory, Conditional, Unsatisfactory, and Unrated.

   a. An Unrated carrier means that a safety rating has not been assigned to the motor carrier by the FMCSA. When a motor carrier is first established, they are classified as an Unrated carrier until a compliance review is conducted.

   b. A Satisfactory safety rating means that a motor carrier has in place and functioning adequate safety management controls to meet the safety fitness standard.

   c. A Conditional safety rating means a motor carrier does not have adequate safety management controls in place to ensure compliance with the safety fitness standard.

   d. An Unsatisfactory safety rating means a motor carrier does not have adequate safety management controls in place to ensure compliance with the safety fitness standard, which has resulted in occurrences.

11. A motor carrier's safety rating is significant for various reasons, and affects its insurance rates and ability to compete for business.

12. FMCSA maintains an online records system, the Safety and Fitness Electronic Records ("SAFER") system, which is accessible through a website. FMCSA uploads information provided by the motor carriers, including the business name, business address, business telephone number, and insurance information. Information such as the number of drivers, crashes, insurance and bonds, inspections and enforcement activity are available on SAFER. The public may access the SAFER system to assess a particular motor carrier. SAFER is often utilized by insurance companies and customers to obtain information on a motor carrier.

4

## PROBABLE CAUSE

13. From April 12, 2016, through May 16, 2016, FMCSA conducted a compliance review of a motor carrier entity, Dallas Logistics, Inc.

14. On paperwork submitted to the FMCSA, Dallas Logistics purported to be based in, and operated out of, Dallas, Texas, controlled by J.Z. and unaffiliated with any other motor carrier. Specifically, the Form OP-1 (dated October 23, 2012) for Dallas Logistics identifies J.Z. as its president, stated that Dallas Logistics' business address was in Dallas, Texas, and attested that it was not affiliated during the past 3 years with any other FMCSA regulated entity.

15. During the compliance review, it became apparent that Dallas Logistics was not based out of Dallas, Texas, but instead, was located in, and operated from, a location in Rochester, New York. FMCSA examiners inquired about this apparent discrepancy, and received the following response in an April 26, 2016 letter on Dallas Logistics letterhead, signed by A.B.:

> *Originally, Mr. [J. Z.] was going to relocate with this family to Dallas, Texas in order to run the trucking company. As [J. Z.] was finalizing his plans, his mother got seriously ill. This prolonged the progress on the move to Texas. Shortly after, his father also developed health aliments and based on these circumstances, Dallas Logistics remains in New York . . . .*

16. This letter was materially false and part of an orchestrated effort to conceal the facts that the defendant, ANATOLIY KIRIK, was the true owner of Dallas Logistics that he controlled it, and that Dallas Logistics was an affiliate and reincarnation of Orange Transportation Services, another motor carrier owned by defendant with a negative rating by

5

FMCSA. Had the affiliation between Orange Transportation Services and Dallas Logistics been disclosed, Dallas Logistics' rating would have been negatively impacted. Specifically, Dallas Logistics' safety rating would have a Conditional safety rating at best.

17.    Special Agents interviewed J.Z. on about December 27, 2017 and February 20, 2019. During the interviews, J.Z. explained that he previously worked for Orange Transportation Services, a business owned by KIRIK. At some point, KIRIK approached him about creating a new motor carrier entity, Dallas Logistics, with J.Z. to be identified as the purported owner and president.

18.    J.Z. stated that he agreed to this arrangement because he believed Orange Transportation Services would go defunct if he did not, and that he would then be unemployed. J.Z. stated that he is the "paper president" only of Dallas Logistics.

19.    J.Z. stated that the letter prepared and sent by A.B. on April 26, 2016, was done without his knowledge, and that the statements in the letter regarding J.Z. and his purported plan to relocate to Dallas, Texas, and the health issues of his parents were all false.

20.    A.B. was interviewed by Special Agents on September 6, 2018 and November 9, 2020. A.B. explained that she was employed by KIRIK and that KIRIK controlled Dallas Logistics and Orange Transportation Services (among other companies). A.B. stated that the various business were operated from the same location in Rochester, New York. In response to the FMCSA review of Dallas Logistics, KIRIK directed A.B. to set up an office at a

warehouse in the Rochester area in order to create the false appearance that it was the office of Dallas Logistics. KIRIK directed her to forge signatures on various documents, and to purge other documents from the files, in connection with the compliance review. He also directed her to write the letter dated April 26, 2016, described above, and told her what to say in it.

## CONCLUSION

21. Based on the foregoing, I respectfully submit that there is probable cause to believe that the defendant, ANATOLIY KIRIK, did make false statements to the FMCSA in violation of Title 18, United States Code, Section 1001, and did conspire with others to do the same, in violation of Title 18, United States Code, Section 371.

*Jason J. Fernandes* (signature)
Jason J. Fernandes, Special Agent
Department of Transportation

Affidavit submitted by email/pdf and attested to me as true and accurate by telephone consistent with Fed.R.Crim. P. 4.1 and 4(d) before me this __16__ day of November, 2020.

*Marian W. Payson* (signature)
HON. MARIAN W. PAYSON
United States Magistrate Judge